O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES A. FITZSIMMONS,<br><br>                  Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                  Respondent. | Case No. EDCV 15-1142-KES<br><br>MEMORANDUM OPINION<br>AND ORDER |

Plaintiff James A. Fitzsimmons appeals the final decision of the Administrative Law Judge ("ALJ") denying his application for Supplemental Security Income ("SSI").  For the reasons discussed below, the Court concludes:  (1) the ALJ did not err in finding that Plaintiff could perform the jobs of office helper, hand packager, and small products assembler; (2) the ALJ fully and fairly developed the record; and (3) the ALJ properly evaluated the opinion of Plaintiff's physician assistant.  The ALJ's decision is therefore AFFIRMED.

//

# I.

# BACKGROUND

On November 21, 2011, Plaintiff protectively filed an application for SSI, alleging disability beginning on January 1, 2007, when he was 23 years old.  Administrative Record ("AR") 132-38.  Plaintiff alleges that he is unable to work due to diabetes and seizures.  AR 152.

On September 6, 2013, an ALJ conducted a hearing, at which Plaintiff, who was represented by counsel, appeared and testified.  AR 29-44.  A vocational expert ("VE") also testified at the hearing.  AR 44-48.

On November 4, 2013, the ALJ issued a written decision denying Plaintiff's request for benefits.  AR 10-19.  The ALJ found that Plaintiff had the severe impairments of uncontrolled diabetes mellitus, seizures, hypertension, hyperlipidemia, and peripheral neuropathy.  AR 12. Notwithstanding his impairments, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following exceptions:

> [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for six hours out of an eight-hour workday but no more than 30 minutes at a time; he can sit for six hours out of an eight-hour workday with brief position changed after approximately 45 minutes to one hour; he can occasionally perform postural activities; he cannot climb ladders, ropes, or scaffolds; he cannot work at unprotected heights, around moving machinery, or other hazards, such as large bodies of water; he cannot perform jobs requiring hypervigilance or intense concentration on a particular task; he should avoid concentrated exposure to extreme temperatures; he cannot

2

repetitively or constantly push and/or pull with the left lower extremities, such as operating foot pedals; and he will likely be off task 10 percent of the workday or work week.

AR 13. The ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as office helper, hand packager, and small products assembler. AR 18-19. The ALJ thus found that Plaintiff was not disabled. AR 19.

## II.
## ISSUES PRESENTED

The parties dispute whether the ALJ erred in:

(1) determining that Plaintiff could perform the jobs of office helper, hand packager, and small products assembler;

(2) failing to fully and fairly develop the record; and

(3) evaluating the opinion of Plaintiff's physician assistant.

## III.
## DISCUSSION

**A.**   **The ALJ Properly Determined That Plaintiff Could Perform the Jobs Identified At Step Five.**

Plaintiff contends that the ALJ erred in determining he could perform the jobs of office helper, hand packager, and small products assembler. Dkt. 20 at 3-6. Specifically, he contends that the requirements of those jobs exceed his RFC, which allows him to be off task 10 percent of the workday or workweek. Id.

At step five, the Commissioner has the burden to demonstrate that the claimant can perform some work that exists in significant numbers in the national or regional economy, taking into account the claimant's RFC, age,

3

education, and work experience.  Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c).  An ALJ may satisfy that burden by asking a VE a hypothetical question reflecting all the claimant's limitations that are supported by the record.  Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); see Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 2002).  In order to rely on a VE's testimony regarding the requirements of a particular job, an ALJ must inquire whether his testimony conflicts with the DOT.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000)).  When such a conflict exists, the ALJ may accept VE testimony that contradicts the DOT only if the record contains "persuasive evidence to support the deviation."  Pinto v. Massanari, 249 F.3d 840, 846 (9th Cir. 2001) (internal quotation marks omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008).

Here, the ALJ asked the VE a hypothetical question incorporating all of the limitations found in the RFC, including the limitation that Plaintiff "would likely be off task up to 10 percent of the workday or work week,"[1] and the VE testified that an individual with Plaintiff's age, education, work experience and RFC could perform such representative occupations as office helper, hand packager, and small products assembler.  AR 45-46.  The VE eroded the number of jobs available by 50% to account for the limitation that Plaintiff may be off task 10 percent of the workday.  AR 46.  The ALJ determined that the VE's testimony was consistent with the DOT and adopted the VE's findings.  AR 18-19.

Plaintiff acknowledges that the VE eroded the number of jobs available

---

[1]    The ALJ defined "10 percent of the workday or work week" as "about 48 minutes a day or four hours a week."  AR 46.

to account for being off task for 10 percent of the workday, but argues that "most companies would not allow an individual to miss that amount of work and still keep their job." Dkt. 20 at 5. Plaintiff's lay opinion that "most companies" would be unwilling to retain a worker who needed to be off task up to 10 percent of the workday or workweek is unsupported. Furthermore, Plaintiff points to no requirement in the DOT for the office helper, hand packager, or small products assembler jobs (and the Court finds none) that is inconsistent with Plaintiff's need to be off task 10 percent of the workday or workweek. See DOT 239.567-010 (office helper), DOT 559.687-074 (hand packager), and DOT 706.684-022 (small products assembler). Thus, the VE's testimony in response to the ALJ's hypothetical that "set out all of [Plaintiff's] impairments" was substantial evidence supporting the ALJ's step five determination. Tackett, 180 F.3d at 1101 (citation and internal quotation marks omitted); see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [VE's] recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.") Accordingly, remand is not warranted on this issue.[2]

**B.    The ALJ Fully And Fairly Developed The Record.**

Plaintiff next contends that the ALJ failed to fully and fairly develop the record. Dkt. 20 at 7-10. Specifically, Plaintiff argues that the ALJ should have recontacted Dr. Joseph Atiya – Plaintiff's treating physician who "work[ed]

---

[2]    The Commissioner's argument that Plaintiff waived his claim because his counsel did not question the VE's testimony at the hearing is without merit. Claimants generally "need not preserve issues in proceedings before the Commissioner." Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005); see also Hernandez v. Colvin, 2016 WL 1071565, at *5 (C.D. Cal. Mar. 14, 2016) (finding no waiver of argument that the VE's testimony conflicted with the DOT where Plaintiff did not ask any questions of the VE at the hearing).

1 | with" and "supervis[ed]" Susanna Kapoor, a treating physician assistant – to

2 | ascertain whether he agreed with or supported her opinion.  Id.  Plaintiff also

3 | argues that a medical expert should have testified regarding whether he meets

4 | and/or equals a listing.  Id.

### 1.    Relevant Background

Ms. Kapoor completed a Diabetes Mellitus Residual Functional Capacity Questionnaire, dated August 1, 2013.  AR 482-85.  Ms. Kapoor indicated that Plaintiff was diagnosed with Type I Diabetes Mellitus, uncontrolled.  AR 482.  She noted that Plaintiff's symptoms were fatigue, difficulty walking, episodic vision blurriness, sensitivity to light, heat or cold, general malaise, muscle weakness, insulin shock/coma, extremity pain and numbness, loss of manual dexterity, sweating, difficulty thinking/concentrating, dizziness/loss of balance, and hyper/hypoglycemic attacks.  Id.  She listed clinical findings of neuropathy with decreased monofilament testing, slurred speech, and increased "BC" [or "BS"].  Id.  She opined that Plaintiff would need to shift positions at will from sitting, standing or walking; would need to take unscheduled breaks during the work day; could frequently lift 20 pounds; could rarely lift 50 pounds; could occasionally twist; could rarely stoop (bend) or crouch/squat; could never climb ladders or stairs; could walk ¼ of a city block without rest or severe pain; could sit for 45 minutes at a time and for at least 6 hours total; could stand 15 minutes at a time and less than 2 hours total; must walk around for 5 minute periods during the work day; must avoid even moderate exposure to extreme cold and extreme heat; must avoid concentrated exposure to high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, cases, dust, and chemicals; and would likely be absent from work more than four days per month as a result of his impairments or treatment.  AR 482-85.

The ALJ discussed Ms. Kapoor's opinion and gave it "little weight" on

6

numerous grounds, including because it was unsupported by specific findings and was inconsistent with the objective medical evidence and with Plaintiff's activities of daily living.  AR 17.

### 2.    Applicable Law

In determining disability, the ALJ "must develop the record and interpret the medical evidence."  Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted).  Nevertheless, it remains Plaintiff's burden to produce evidence in support of his disability claims.  See Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001) (as amended).  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Id. at 459-60; see also King v. Comm'r of Soc. Sec. Admin., 475 F. App'x 209, 209-10 (9th Cir. 2012) (no duty to develop the record further where the evidence was adequate to make a determination regarding the claimant's disability).  If the evidence is insufficient to determine if the claimant is disabled, an ALJ may, but is not required to, recontact the medical source.  See 20 C.F.R. § 416.920b(c) ("[if] . . . we have insufficient evidence to determine whether you are disabled . . . we will determine the best way to resolve the inconsistency or insufficiency").[3]

### 3.    Analysis

The Court finds that the ALJ fully and fairly developed the record. Plaintiff acknowledges that the ALJ was "not required to recontact Dr. Atiya,"

---

[3]    Prior to March 26, 2012, the ALJ was required to recontact a treating physician in certain circumstances pursuant to 20 C.F.R. § 416.912(e), which was amended in February 2012.  See Stewart v. Colvin, 2014 WL 5410240 (D. Kansas Oct. 22, 2014) ("[20 C.F.R. § 416.920b(c)] give[s] the ALJ much more flexibility and discretion in deciding whether to contact a treating source than the former 20 C.F.R. § 416.912(e).").

but argues only that she "should have" done so to determine whether he agreed with Ms. Kapoor's opinion.  Dkt. 20 at 8-9.  First, as discussed below, Plaintiff has not demonstrated that Ms. Kapoor works under the close supervision of Dr. Atiya.  See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Second, the ALJ properly evaluated the opinion of Ms. Kapoor, as discussed below, and the medical record was adequate to allow for proper evaluation of the medical evidence.  Third, even if the evidence were insufficient to determine whether Plaintiff is disabled, recontacting the medical source is not mandatory under Section 416.920b.  Fourth, recontacting Dr. Atiya to determine whether he agreed with Ms. Kapoor's opinion would have been pointless.  Even if Dr. Atiya agreed with Ms. Kapoor's opinion, the opinion would remain, as the ALJ found, lacking in clinical findings, inconsistent with the objective medical evidence as a whole, and inconsistent with Plaintiff's activities of daily living.  The ALJ did not err in failing to recontact Dr. Atiya.

Regarding Plaintiff's contention that a medical expert should have testified, Plaintiff does not point to any ambiguity in the record that a medical expert would have clarified.  Plaintiff merely argues that a medical expert "should have been . . . present to review the medical records and determine whether" he met or equaled a listing.  Dkt. 20 at 8.  As the ALJ discussed, the record includes treatment records; the opinion of an internal medicine consultative examiner finding no limitations except restrictions for heights, ladders, and heavy moving machinery, and frequent posturals; and the determination of two State agency medical consultants who reviewed the medical records stating that Plaintiff did not have any severe medically determinable impairments.  AR 16-17, 50-56, 66-72, 204-09.  The ALJ did not err in failing to call a medical expert to testify.

Plaintiff has not shown that there was any need to further develop the

8

record here.  Nor did Plaintiff's counsel argue to the ALJ that she should have recontacted Dr. Atiya and called a medical expert to testify, even though the ALJ held the record open for two weeks to allow Plaintiff to submit additional evidence.  AR 10, 28; see Sefcik v. Colvin, 2016 WL 626739, at *4 (C.D. Cal. Feb. 16, 2016) (holding no duty to further develop the record where the claimant neither showed a need to supplement the record nor raised the issue with the ALJ) (citation omitted).  Accordingly, remand is not warranted on this issue.

## C.   The ALJ Properly Considered The Opinion Of Plaintiff's Physician Assistant.

Plaintiff contends that the ALJ did not properly consider the opinion of Ms. Kapoor, a physician assistant, which "should be considered an opinion from an acceptable medical source" because "Ms. Kapoor was working with and under the supervision of [P]laintiff's primary care physician, Dr. Atiya." Dkt. 20 at 11-21.

### 1.   Relevant Background

As discussed above, Ms. Kapoor completed a Diabetes Mellitus Residual Functional Capacity Questionnaire, dated August 1, 2013, and assessed functional limitations that would preclude Plaintiff from working.  AR 482-85. The ALJ gave Ms. Kapoor's opinion "little weight" because it was brief, conclusory, and inadequately supported by clinical findings; was inconsistent with the objective medical evidence as a whole; and was inconsistent with Plaintiff's activities of daily living.  AR 17.  The ALJ further noted that "the nature of [Plaintiff's] impairments are outside the area of Ms. Kapoor's specialty," the opinion was not from an acceptable medical source and was not entitled to be given the same weight as a qualifying medical source opinion, and the opinion was on an issue reserved to the Commissioner.  Id.
//

### 2.   Applicable Law

Physician assistants are generally treated as "other sources" rather than "acceptable medical sources." See 20 C.F.R. § 416.913(d ).  Opinions from "other sources" can be afforded "less weight than opinions from acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996), superseded by regulation on other grounds, 20 C.F.R. §§ 416.913(a)(1-5), as recognized in Boyd v. Colvin, 524 F. App'x 334, 336 (9th Cir. 2013) (citation omitted).  "The ALJ may discount testimony from . . . 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" Molina, 674 F.3d at 1111 (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).

### 3.   Analysis

The Court finds that the ALJ properly evaluated Ms. Kapoor's opinion and gave germane reasons for discounting it.

Plaintiff argues that Ms. Kapoor should be considered an acceptable medical source because she "work[ed] with and under the supervision of" Dr. Atiya and worked at the same facility.  Dkt. 20 at 13.  However, the record does not indicate that Dr. Atiya closely supervised Ms. Kapoor.  See Molina, 674 F.3d at 1111 (holding physician assistant not qualified as a treating source because the record did not show she worked under the physician's close supervision).  The questionnaire does not contain Dr. Atiya's name or signature.  AR 482-85.  The progress notes signed by Ms. Kapoor contain the name of Dr. Atiya as the primary care physician and appointment facility, but do not contain Dr. Atiya's signature or give any indication that Dr. Atiya was present during Plaintiff's office visits or that he consulted with Ms. Kapoor on Plaintiff's treatment.  AR 269-76, 287-88, 291-93, 303-05, 308-10, 312-14, 317-19; see Garcia v. Astrue, 2011 WL 3875483, *12 (E.D. Cal. Sept. 1, 2011) ("Only in circumstances that indicate an agency relationship or close

1   supervision by 'an acceptable medical source' will evidence from an 'other

2   source' be ascribed to the supervising 'acceptable medical source.'") (citation

3   omitted); <u>Register v. Astrue</u>, 2011 WL 6369766, at *10 (D. Ariz. Dec. 20,

4   2011) (finding nurse practitioner opinion did not constitute an "acceptable

5   medical source" opinion where claimant offered no evidence that the physician

6   closely supervised the "other source," consulted with her, or had an agency

7   relationship with her).  Accordingly, Plaintiff has not shown that Ms. Kapoor's

8   opinion should be treated as that of an acceptable medical source.

9       The ALJ gave germane reasons for discounting Ms. Kapoor's "other

10  source" opinion.  AR 17.  The ALJ properly discounted Ms. Kapoor's opinion

11  because it was brief, conclusory, and inadequately supported by clinical

12  findings.  AR 17; <u>see</u> <u>Molina</u>, 674 F.3d at 1111 (holding ALJ properly

13  discounted physician assistant's opinion that consisted of a check-the-box form

14  that lacked supporting reasoning or clinical findings).  The questionnaire was

15  primarily a check-the-box form and listed clinical findings of neuropathy,

16  decreased monofilament sensation, slurred speech, and an increase in BC [or

17  BS], with no indication of the severity.  AR 482.  The ALJ could have

18  reasonably found that the minimal clinical findings did not support the

19  extreme functional limitations assessed by Ms. Kapoor.

20      The ALJ properly discounted Ms. Kapoor's opinion because it was

21  inconsistent with the objective medical evidence as a whole, which consisted of

22  generally unremarkable physical findings and showed that Plaintiff was

23  generally noncompliant with treatment recommendations.  AR 17.

24  "Inconsistency with medical evidence" is a "germane reason[ ] for discrediting

25  the testimony of lay witnesses."  <u>Bayliss</u>, 427 F.3d 1218 (citation omitted).

26  The ALJ noted that Plaintiff received treatment in the emergency room on

27  several occasions due to seizures related to hypoglycemia, but that Plaintiff

28  admitted that he had not eaten in a timely manner on those occasions.  AR 16,

11

225, 241, 246.  Plaintiff was advised to eat three meals per day plus a night time snack to avoid seizures secondary to hypoglycemia.  AR 230.  In December 2011, Plaintiff complained of a diabetic foot.  AR 16, 270.  Ms. Kapoor found that Plaintiff's bilateral heels were with thick, cracked hyperkeratotic skin, and treated Plaintiff with a foot cream.  AR 16, 271.  In January 2012, Ms. Kapoor found that Plaintiff had severely callused feet,  with cracking skin at the heels, but circulation and monofilament were normal.  AR 16, 273.  Plaintiff was referred to a podiatrist for further treatment to prevent diabetic ulcerations, and he was prescribed an antifungal medication.  AR 16, 273, 282.

In April 2012, a consultative examiner found that Plaintiff ambulated with a normal gait; did not require an assistive device for ambulation; had multiple calluses and cracked skin on the heels of both feet, but no swelling, lower extremity edema, or ulcerations; had an unremarkable examination of the extremities and spine; had 5/5 motor strength throughout; and had grossly intact sensation.  AR 16, 206-07.  Plaintiff was diagnosed with uncontrolled insulin dependent diabetes complicated by hypoglycemia with induced seizures, leg and foot pain due to calluses, and controlled hypertension.  AR 16, 207-08.

In April and May 2012, Plaintiff was taken to the emergency room due to hypoglycemic episodes, and laboratory findings in May 2012 continued to show elevated glucose levels.  AR 16, 211, 215, 406.  In June 2012, Plaintiff walked with an antalgic gait due to bilateral heel pain and was referred for custom orthotics.  AR 16, 298.  In August 2012, Plaintiff's A1C levels were still elevated, but had improved, resulting in decreased episodes of hypoglycemia.  AR 16, 303.  In May 2013, Plaintiff's diabetes was noted to be uncontrolled, but he admitted that he did not carefully watch his diet or activity levels.  AR 16, 312, 464.  The ALJ reasonably found that the objective

12

1  medical evidence showed that Plaintiff was noncompliant with treatment

2  recommendations, and there was no evidence that he has suffered from end

3  organ damage or had significant problems with his vision, kidneys, or hands.

4  AR 17.[4]

5      The ALJ also properly discounted Ms. Kapoor's opinion as inconsistent

6  with Plaintiff's admitted activities of daily living.  AR 17.  Plaintiff testified

7  that he drives his son to school, drives to the pharmacy, helps with dishes,

8  watches television, occasionally mows the lawn, watches his children, ages 2

9  and 7, for approximately five hours per day, helps his son with homework, and

10 continued to look for work after the alleged onset date.  AR 14, 36-39, 41.  He

11 testified that he has no problems walking, although "[i]t's just uncomfortable

12 sometimes."  AR 43.  Plaintiff argues that the fact that he is able to perform

13 these activities does not mean that he will be able to hold down a job.  Dkt. 20

14 at 19.  However, inconsistency with Plaintiff's activities of daily living is a

15 germane reason for discounting Ms. Kapoor's opinion, which included

16 functional limitations that would preclude Plaintiff from walking more than 2

17 hours during a workday.  See Ruiz v. Colvin, __ F. App'x __, 2016 WL

18 158672, at *1 (9th Cir. 2016) (finding inconsistency with activities of daily

19 living, which included light chores and caring for her great niece and her

20 parents, a germane reason for discrediting opinion of physician assistant); see

21 also Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (as amended)

22

23      [4]      Plaintiff argues that the ALJ's finding that Ms. Kapoor's opinion

24 was inconsistent with the objective evidence as a whole triggered the ALJ's

25 duty to recontact Dr. Atiya.  Dkt. 20 at 16, 20.  Plaintiff's argument lacks

26 merit, as discussed above.

27

28

(finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989)).

The ALJ also properly noted that the nature of Plaintiff's impairments was outside the area of Ms. Kapoor's specialty. AR 17; <u>see</u> SSR 06-03p (When considering the opinion of "other sources," "it would be appropriate to consider such factors as . . . the source's area of specialty or expertise.") Plaintiff argues that Ms. Kapoor treated Plaintiff "under the supervision" of Dr. Atiya, and thus, "it does not appear that the nature of the impairments that Ms. Kapoor was treating [P]laintiff for were outside her specialty." Dkt. 20 at 19. As discussed above, Plaintiff has not shown that Dr. Atiya closely supervised Ms. Kapoor and that his specialty was, therefore, her specialty.

The ALJ correctly noted that Ms. Kapoor's opinion was not entitled to the same weight as a qualifying medical source opinion, <u>Gomez</u>, 74 F.3d at 970-71, and that a determination of a claimant's ultimate disability is reserved to the Commissioner. 20 C.F.R. § 416.927(d). Contrary to Plaintiff's argument, the ALJ did not ignore Ms. Kapoor's opinion on the issue of disability. Dkt. 20 at 20. The ALJ thoroughly discussed Ms. Kapoor's opinion and properly found it not conclusive on the ultimate issue of disability. <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ provided germane reasons for discounting the opinion of Ms. Kapoor and did not err in considering her opinion.[5] Accordingly, remand is

---

[5]     Even if Ms. Kapoor's opinion were treated as an opinion from an "acceptable medical source," the ALJ's discounting of her opinion was legally sufficient. For example, a lack of supporting objective evidence is a specific and legitimate reason for rejecting a treating physician's opinion. <u>See</u> <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation

not warranted on this issue.

## IV.

## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: <u>May 11, 2016</u>

_Karen E. Scott_

_____

KAREN E. SCOTT
United States Magistrate Judge

omitted).